# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Don Alexander, ) | Civil Action No. 1:13-02164-JMC |
| ) | |
| Appellant, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Barnwell County Hospital, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

This matter is before the court by way of an appeal by Appellant Don Alexander ("Appellant" or "Alexander") from an order filed by the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court") on June 11, 2013, and a motion to dismiss the appeal by Appellee Barnwell County Hospital (the "Hospital" or "Debtor"). (See ECF Nos. 1, 5.) Specifically, Appellant appeals the Bankruptcy Court's Order Denying Don Alexander's Motion to Dismiss and/or Stay (the "Order").[1] (See ECF No. 1 at 2-10.) Appellant asserts that the Bankruptcy Court erred in denying his motion to dismiss the Hospital's Chapter 9[2] bankruptcy petition and/or stay the sale of the Hospital's assets pursuant to its plan for adjustment of debts. (Id. at 1 (referencing ECF No. 3-3).) The Hospital responded to the appeal by moving to dismiss it for lack of jurisdiction and on the ground of mootness. (ECF No. 5.)

For the reasons set forth below, the court **GRANTS** the Hospital's motion to dismiss and **DISMISSES** the appeal as moot.

---

[1] This matter is one (1) of four (4) appeals challenging orders entered by the Bankruptcy Court. The other three appeals are identified as follows: In re: Barnwell Cnty. Hosp., C/A No. 1:12-02265-JMC (D.S.C. Aug. 9, 2012); In re: Barnwell Cnty. Hosp., C/A No. 1:13-01678-JMC (D.S.C. June 19, 2013); and In re: Barnwell Cnty. Hosp., C/A No. 1:13-02032-JMC (D.S.C. July 24, 2013).

[2] Chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901-946, governs the adjustment of debts of municipalities. Section 901 sets out which provisions of Title 11 apply to filings of municipalities. See 11 U.S.C. § 901.

## I. RELEVANT BACKGROUND

To support its findings, the Bankruptcy Court set forth the following detailed findings of fact, which this court will not set aside unless clearly erroneous:

> Prior to the filing of its bankruptcy petition, Debtor had been unable to pay its debts as they became due. For years, Barnwell County provided funding to keep Debtor operating, but Debtor was informed that Barnwell County would no longer provide funding. Furthermore, as a rural hospital, Debtor does not have the customer volume to pay for new technology and facilities that larger hospitals in neighboring areas can provide. Consequently Debtor, along with Bamberg County and Bamberg County Memorial Hospital ("Bamberg Hospital"), sought a third party purchaser to provide healthcare for the residents of Bamberg County and Barnwell County.
>
> On September 29, 2011, Debtor, along with Bamberg Hospital, Barnwell County, and Bamberg County, executed an Asset Purchase Agreement ("Original APA") with SC Regional Health System, LLC ("RHS") for the purchase of substantially all of the assets of Debtor and the Bamberg Hospital.
>
> On October 5, 2011, Debtor filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code").
>
> A group of citizens, including Alexander, filed an action in the Court of Common Pleas for Barnwell County, South Carolina against members of Barnwell County Council, <u>Alexander et al. v. Houston et al.</u>, Case No. 2011-CP-06-476 ("State Court Action"). The plaintiffs in the State Court Action challenged the ability of members of Barnwell County Council to also serve on the Hospital Board of Debtor based on the provision against dual office holding in the South Carolina Constitution. The members of Barnwell County Council named in the State Court Action filed a motion to dismiss the complaint in the State Court Action, which the trial court granted by an order entered May 2, 2012. The plaintiffs in the State Court Action appealed.
>
> Debtor's Amended Plan for Adjustment of Debts, as modified by the Debtor's Modification to First Amended Plan for Adjustment of Debts (collectively, the "Plan") was based on the transaction contemplated by the Original APA. On May 23, 2012, the Bankruptcy Court entered its Order confirming Debtor's Plan (the "Confirmation Order").[3]

---

[3] The Bankruptcy Court also found in the Confirmation Order that the dual office holding prohibition of the South Carolina Constitution had not been violated and that the Hospital met Chapter 9 eligibility requirements.

In confirming Debtor's Plan, this Court considered objections to the Plan from Alexander and others raising the issue of the eligibility of Debtor for chapter 9 relief on, among other grounds, the same dual office holding proscription. The precise issue, parties and arguments were different in the State Court Action and in this Court. This Court determined Debtor was eligible and determined that the dual office holding provisions of the South Carolina Constitution were not violated albeit on different grounds than the state trial court.

Alexander filed a notice of appeal of the Confirmation Order. He did not move for a stay pending the outcome of the appeal.

The transaction contemplated under the Original APA did not close, the reasons for which were vigorously contested by Debtor and RHS. As a result of the transaction not closing, RHS filed an application seeking payment of an administrative expense claim ("RHS Application") in the amount of approximately $1,819,000.00 for liquidated damages under the Original APA and for compensation and reimbursement of fees and expenses under a separate Consulting Agreement between Debtor and RHS. Debtor objected to the RHS Application and disputed that RHS was entitled to a claim against Debtor. Additionally, Debtor asserted that it was entitled to damages against RHS, which RHS disputed.

When the transaction did not close under the Original APA, Debtor sought a new purchaser to be substituted for RHS and close the transaction in accordance with the terms approved in the Plan. Debtor located a new purchaser and executed a new Asset Purchase Agreement with BCH dated November 26, 2012 (the "Substitute APA"). Thereafter, on December 7, 2012, Debtor filed a Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan ("Substitution Motion") seeking an Order from this Court authorizing Debtor to substitute the New APA in place of the Original APA and allowing Debtor to sell its assets to BCH instead of RHS as contemplated in the Plan.

A Notice and Application for Settlement and Compromise ("Settlement Application") seeking approval of a Settlement Agreement and Release ("Settlement Agreement") between Debtor and RHS was entered on February 27, 2013.

On April 18, 2013, the Court entered an Order granting the Substitution Motion and approving the Settlement Agreement ("Substitution Order").

On May 2, 2013, Alexander moved to amend the Substitution Order.

On May 2, 2013, the Estate of Robert M. Peeples and Six Participants of the Barnwell County Pension Plan filed a notice of appeal of the Substitution Order.

On May 7, 2013, the Court entered an Order denying Alexander's motion to amend.

On May 21, 2013, Alexander filed a notice of appeal of the Substitution Order.

On May 29, 2013, the South Carolina Supreme Court filed an opinion reversing the trial court's order dismissing the State Court Action, finding that the service of members of Barnwell County Council on both County Council and Hospital Board constitutes improper dual office holding in violation of the South Carolina Constitution, and remanding the case to the trial court.

On June 6, 2013, Alexander filed a motion to dismiss and/or stay and requested an expedited hearing on the motion.

The Court granted the request for an expedited hearing, which was held on June 11, 2013. [After the hearing, the Court entered an order denying Alexander's motion to dismiss and/or stay.]

The closing of the sale pursuant to the Substitute APA [][occurred on] June 12, 2013.

(ECF No. 1 at 2-5.)

On August 9, 2013, Appellant filed a notice to appeal the Order to this court pursuant to 28 U.S.C. § 158(a) or (b). (ECF No. 1.) On August 12, 2013, the Clerk of Court entered a document that notified the parties of the filing of the bankruptcy appeal and set up a briefing schedule for their submissions.[4] (ECF No. 2.) On August 14, 2013, the Hospital filed a motion to dismiss the appeal for lack of jurisdiction and mootness. (ECF No. 5.) Appellant filed opposition to the Hospital's motion to dismiss on September 3, 2013, to which the Hospital filed a reply in support of its motion on September 12, 2013. (ECF Nos. 10, 11.)

## II.    LEGAL STANDARD

A.    Bankruptcy Appeals

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; see, e.g., In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). The standard for finality of bankruptcy court orders

---

[4] The briefing schedule for a bankruptcy appeal to a federal district court is established by law. See Fed. R. Bankr. P. 8009. According to Rule 8009, an appellant has fourteen days after filing a notice of appeal within which to file a supporting brief. Id. at 8009(a)(1).

is relaxed from that of non-bankruptcy district court orders under 28 U.S.C. § 1291.  In re Looney, 823 F.2d 788, 790 (4th Cir. 1987) (citing A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986)).  A court may consider an order a final order for appeal purposes if it resolves the litigation, decides the merits, settles liability, establishes damages, or determines the rights of even one of the parties to the bankruptcy case.  Id.

The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding.  See 28 U.S.C. § 158(c)(2).  Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard.  Fed. R. Bankr. P. 8013.  A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012).  A bankruptcy court's conclusions of law are subject to de novo review.  In re Biondo,  180 F.3d 126, 130 (4th Cir. 1999); In re K & L Lakeland, Inc., 128 F.3d 203, 206 (4th Cir. 1997).

B.     The Doctrine of Mootness

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."  Deakins v. Monaghan, 484 U.S. 193, 199 (1988) (citations omitted).  "'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction . . . .'"  Townes v. Jarvis, 577 F.3d 543, 546 (4th Cir. 2009) (quoting United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008)).  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies" under Article III of the Constitution.  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983).  "A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Warren v. Sessoms & Rogers, P.A., 676 F.3d 365,

5

370 (4th Cir. 2012) (internal quotation marks omitted).

Mootness in bankruptcy appeals arises in two forms: constitutional mootness and equitable mootness. Carr v. King, 321 B.R. 702, 705 (E.D. Va. 2005). Constitutional mootness refers to the well-settled notion that "[w]hen there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 841 F.2d 92, 95 (4th Cir. 1988). A federal court lacks authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Therefore, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Id. (quoting Mills, 159 U.S. at 653).

In contrast, "the doctrine of equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002). Equitable mootness is "[a]pplied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments" and "is often invoked when it becomes impractical and imprudent 'to upset the plan of reorganization at this late date.'" Id. at 625 (quoting In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994)). Moreover, in applying equitable mootness, a court "does not employ rigid rules," but must "determine whether judicial relief on appeal can, as a pragmatic matter, be granted." Id. Specific "[f]actors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered

has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." Id.

C.    Motions to Dismiss for Lack of Jurisdiction or Mootness

The appropriate means for challenging either the court's jurisdiction or the mootness of a matter is a motion under Fed. R. Civ. P. 12(b)(1). See, e.g., Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Friends of Animals v. Salazar, 670 F. Supp. 2d 7, 11 (D.D.C. 2009) (holding that "[a] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1)"). The burden of showing subject matter jurisdiction on a Rule 12(b)(1) motion rests with the party invoking it. Adams, 697 F.2d at 1219.

### III.    ANALYSIS

In this appeal, Appellant argues that the Bankruptcy Court erred in denying his motion to dismiss the Hospital's Chapter 9 bankruptcy petition and/or stay the sale of assets pursuant to its plan for adjustment of debts. (See ECF No. 1 (referencing ECF No. 3-3).) Before considering the merits of the appeal, the court must address first the issue of its jurisdiction, which includes the Hospital's assertion that the appeal is barred by mootness, because mootness is a jurisdictional issue. See, e.g., Church of Scientology of Cal., 506 U.S. at 12 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed," for federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it

will 'raise a lack of subject-matter jurisdiction on its own motion.'") (quoting <u>Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982)).

A.   <u>The Hospital's Motion to Dismiss</u>

   1.   *The Parties' Arguments*

The Hospital moves for dismissal of the appeal, arguing that (1) the court lacks jurisdiction over the matter because the order being appealed is not a final order and (2) the appeal is both constitutionally moot and equitably moot. (ECF No. 5.) In support of these arguments, the Hospital asserts that the court lacks jurisdiction because the Order is not a final order and Appellant has failed to request or be granted leave to appeal the Order. (<u>Id.</u> at 2.) Alternatively, the Hospital asserts that dismissal for mootness is appropriate because the Plan has been substantially consummated; Appellant failed to obtain a stay of the Confirmation Order pending the appeal; the court cannot grant effective relief on appeal even if Appellant's arguments have merit; and even if the court could grant effective relief, implementation of that relief would be inequitable. (<u>Id.</u>)

To show that the Plan has been substantially consummated, the Hospital submitted evidence via affidavit that on June 12, 2013, in accordance with the Plan: (1) all of the Hospital's assets were transferred to BCH Acquisitions Group, which took control of the hospital facility and hired workers that had been previously employed by the Hospital[5]; (2) BCH Acquisitions

---

[5] In addition, BCH received the following from the Hospital: (1) all schedules and due diligence items incident to the New APA; (2) a deed of the real property comprising the Hospital's facility; (3) the right, title and obligations of certain of the Hospital's operating contracts; (4) Bills of Sale for the Hospital's personal property; (5) transfers and powers of attorneys for certain licenses for the operation of the hospital, its rural facilities and its pharmacies; (6) proof of settlements of certain indebtedness; and (7) certificates of Barnwell County and the Hospital regarding the completion of certain conditions precedent to the sale. (ECF No. 5-2 at 5 ¶ 23.)

Group paid the Hospital closing and cure costs in the amount of $1,400,000.00[6]; (3) a Creditor's Distribution Trust was created, which entity was the recipient of any remaining non-purchased assets of the Hospital for collection and distribution to its unsecured creditors[7]; and (4) the Hospital ceased operations. (ECF No. 5-2 at 5-6.) Based on the foregoing, the Hospital argues that the appeal is constitutionally moot because Appellant seeks to accomplish the impractical and impossible by unwinding the Hospital's bankruptcy. (ECF No. 5-1 at 11-12.)

The Hospital also argues that the appeal is equitably moot because it would be "both impractical and imprudent to upset the Hospital's bankruptcy" and "[t]he four factors considered . . . in determining whether to dismiss an appeal as equitably moot weigh heavily in favor of dismissal in this case." (Id. at 12-17.) In support of this argument, the Hospital asserts that (1) Appellant failed to obtain a stay of either the Confirmation Order or the Substitution Order on appeal; (2) the Plan has been substantially consummated; (3) the relief requested by Appellant would substantially affect the success of the Plan; and (4) the Hospital's creditors, BCH Acquisitions Group, and other third parties would be significantly harmed if the court granted the relief requested in the appeal. (Id.) Accordingly, the Hospital contends that the appeal should be dismissed for mootness.

Appellant opposes the motion to dismiss, arguing that the Order meets the more flexible standards of a final, appealable order in a bankruptcy matter, which standards only require that the order "finally dispose of discrete disputes within the larger case." (ECF No. 10 at 2 (citing,

---

[6] Upon receipt of the $1,400,000.00, the Plan required the Hospital to disburse $701,382.24 to the United States for Medicare overpayments, $47,500.00 to First Citizens Bank and Trust Company, Inc., and $17,000.00 to South Carolina Rural Health. (ECF No. 5-2 at 6 ¶ 26.) In total, the Hospital has paid allowed administrative expenses in the amount of $900,000.00, in addition to final operating costs through June 12, 2013. (Id. at ¶ 27.)
[7] The Plan required that the Hospital's right to recover preferential and fraudulent transfers be transferred and vested in a Creditors Distribution Trust. (ECF No. 5-2 at 5 ¶ 21.)

9

e.g., In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir. 1989); In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1983)).) Appellant next argues that the appeal is not constitutionally moot because the court has the power to unwind the Hospital's sale no matter the complexity or difficulty. (Id. at 3 (citing In re Lomagno, 320 B.R. 473, 480 (1st Cir. BAP 2005) (Bankruptcy court had equitable power to find a foreclosure sale, which occurred in violation of automatic stay, void and without effect); In re Wright, 329 Fed. Appx. 137 (9th Cir. 2009) ("unscrambling the eggs" is theoretically possible through disgorgement of unsecured creditors)).) Appellant further argues that dismissal of the appeal for equitable mootness is unwarranted because (1) Appellant sought a stay as soon as he had grounds to support a stay; (2) the Hospital substantially consummated the Plan by transferring assets and paying creditors after it had been warned about the consequences of proceeding with the assets sale and/or transfer of assets while an appeal was pending; (3) the Hospital should not have attempted to complete the Plan since it was not an eligible Chapter 9 debtor; and (4) a reversal of the Plan would have a limited effect on third parties since the purchaser of the Hospital had notice of Appellant's objection to the sale, and the Hospital's other assets have not been distributed to unsecured creditors. (Id. at 4-6 (citing ECF Nos. 10-1, 10-2, 10-3, 10-4).) Therefore, Appellant requests that the court deny the motion to dismiss and consider the appeal on the merits.

    2.    *The Court's Review*

Upon review, the court finds that it has jurisdiction to address mootness. Because it denied Appellant's motion to dismiss and/or stay, the Order allowed the sale of the Hospital's assets to proceed in accordance with the Plan. Based on the foregoing, the court is convinced that the Order is the type of decree that has a final and irreparable effect on the rights of the parties, which effect appellate courts have allowed jurisdiction for an appeal pursuant to the

collateral order doctrine. Looney, 823 F.2d at 791 (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949) ("This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.")).

With a finding that it has jurisdiction to address mootness, the court is authorized to conclude that this appeal is both constitutionally moot and equitably moot. This appeal is constitutionally moot because Appellant seeks a remedy that would require undoing the Plan in its entirety. In this regard, the Plan has been implemented such that a greater part of the Hospital's assets are in the possession of a non-party to this action and any remaining assets have either already been distributed or are about to be distributed to other non-parties. Moreover, most of the proceeds from the transfer of the Hospital's assets have been distributed to its creditors, who are also non-parties to this action. Based on the foregoing, the court finds that it would be impossible to award Appellant effective relief under these circumstances. Therefore, the court finds that the appeal should be dismissed as constitutionally moot.

Alternatively, upon consideration of the four (4) factors used to determine whether judicial relief on appeal can be granted, the court finds that the appeal is equitably moot as well. First, even though Appellant sought and was denied a stay in the Bankruptcy Court, he failed to seek a stay from this court pending the appeal.[8] While a party is not required to seek a stay pending appeal, a party who fails to do so incurs the risk that during the pendency of the appeal, the appeal may be rendered moot. In re Shawnee Hills, Inc., 125 Fed. Appx. 466, 470 (4th Cir.

---

[8] Bankruptcy Rule 8005 expressly provides that even in the face of a denial of a stay by the bankruptcy court, "[a] motion for such relief, . . . may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr. 8005.

11

2005) (citing Taylor v. Austrian, 154 F.2d 107, 108 (4th Cir. 1946)); In re Kevin Blake Carr, 321 B.R. 702, (E.D. Va. 2005).  In this case, because this court was not asked to issue a stay pending the appeal, the Hospital was authorized to carry out the Plan before this appeal could be heard.

As to the second factor, the consummation of the Plan has been more than substantial. Substantial consummation as defined by the Bankruptcy Code requires three events: (1) transfer of all or substantially all of the property proposed by the plan to be transferred; (2) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (3) commencement of distribution under the plan.  11 U.S.C. § 1101(2); see Mac Panel, 283 F.3d at 625-26.  Based on the facts made known to the court, all three of these events have occurred. Moreover, Appellant does not dispute that the Plan was substantially consummated.  Instead, Appellant takes the position that the Plan's consummation occurred after the Hospital had been warned about the consequences of proceeding with an assets sale and/or transfer of assets while an appeal was pending.  Notwithstanding Appellant's arguments, it is clear that the Plan has been substantially consummated.

The third factor weighs against Appellant because he seeks to undo the Plan completely, as opposed to a less extreme measure, such as undoing one component of the Plan. Finally, with respect to the fourth factor, the court finds that the remedy Appellant seeks would unduly harm innocent third parties, who are not before the court, including BCH Acquisitions Group and any of the Hospital's creditors to whom money was distributed.  Therefore, using the four-factor test set forth by the Fourth Circuit for evaluating equitable mootness, the court finds that this appeal should be dismissed as equitably moot.

B.       <u>The Appeal of the Bankruptcy Court's Order</u>

Because the appeal is moot, the court need not consider the merits of the appeal. <u>Mills v. Green</u>, 159 U.S. 651, 653 (1895) ("It necessarily follows that when, pending an appeal from the judgment of a lower court, . . . , an event occurs which renders it impossible for this court, . . . , to grant him any effectual relief whatsoever, the court will not proceed to a formal judgment, but will dismiss the appeal.")

## IV.    CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** the Hospital's motion to dismiss and **DISMISSES** as moot Appellant's appeal of the Bankruptcy Court's Order Denying Don Alexander's Motion to Dismiss and/or Stay. (ECF Nos. 1, 5.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 18, 2014
Greenville, South Carolina